UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRISHA HINES, an individual and borrower,<br><br>        Plaintiff,<br><br>    v.<br><br>WELLS FARGO HOME MORTGAGE, INC., a division of Wells Fargo Bank N.A., as successor to WACHOVIA CORPORATION,<br><br>        Defendant. | No.  2:14-CV-01386 JAM-KJN<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |

Defendant Wells Fargo ("Defendant") seeks to dismiss Plaintiff Trisha Hines' ("Plaintiff") first amended complaint ("FAC" Doc. #10) alleging that Defendant's agent deceived her into agreeing to a loan modification with unfavorable terms. Plaintiff opposes the motion (Doc. #13).

   I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

   Plaintiff Trisha Hines secured a mortgage for her home in 2003.  FAC ¶ 10.  Unable to keep up with the monthly payments,

1

1  Plaintiff sought refinancing in 2006.  FAC ¶ 11.  In 2009, she
2  sought a further loan modification due to her "fluctuating
3  income."  FAC ¶ 12.  Plaintiff secured a broker, West Coast
4  Financial, to negotiate the modification.  FAC ¶¶ 8, 12.  She
5  also retained West Coast Financial to explain the modification
6  terms to her, because she did not have the knowledge to
7  understand them on her own.  FAC ¶ 19.
8       In informing Plaintiff about the loan terms Defendant was
9  offering, West Coast Financial advised Plaintiff that the
10 modification was to include a fixed interest rate.  FAC ¶ 14.
11 Plaintiff alleges that based on the broker's reassurances about
12 the terms of the loan, she signed a loan modification agreement.
13 FAC ¶ 19; see RJN Exh. G.
14      But the true terms of the loan were different.  They
15 included monthly payments starting at $791.08, increasing
16 annually from September 2009 to September 2014.  FAC ¶ 15; RJN
17 Exh. G.  The interest rate started at 2.500% and increased
18 annually by 0.500% throughout the same five-year period.  FAC
19 ¶ 15.  Thereafter, the monthly payments and interest rates were
20 "set to skyrocket to $2,221.58 with an interest rate of 6.148%."
21 FAC ¶ 16.  Although Plaintiff requested a copy of the agreement,
22 she claims she never received one.  FAC ¶ 18.  It was only in
23 2012, when Plaintiff again attempted to modify her loan that she
24 allegedly learned the true terms.  Id.
25      Plaintiff alleges that West Coast Financial misrepresented
26 the true terms to induce her to enter into the highly unfavorable
27 modification.  See FAC ¶¶ 20, 40.  Plaintiff claims that
28 Defendant is responsible for this wrongdoing because West Coast

Financial "worked closely with" Defendant "as [Defendant's] agent." FAC ¶ 13.

Due to the loan modification's "usurious and continuously escalating interest rate," Plaintiff has been unable to keep up with the payments. FAC ¶ 21. The interest-only payments caused the principal balance of the loan to increase such that Plaintiff now owes more on the loan than the house is worth. FAC ¶ 22. As of the date of filing her complaint, Plaintiff was in default on her mortgage, but remained in her home. See id.

Plaintiff brings seven causes of action: (1) Fraud in the Inducement, (2) Fraud in the Concealment, (3) Unfair Business Practices (Violation of Cal. Bus. & Prof. Code § 17200 et seq.) ("UCL"), (4) Violation of the Covenant of Good Faith and Fair Dealing, (5) Negligence, (6) Promissory Estoppel, and (7) Intentional Misrepresentation. The Court dismissed Plaintiff's original complaint for failure to adequately plead tolling of the statutes of limitations (Doc. #9). Defendant now seeks to dismiss Plaintiff's first amended complaint.

When briefing on the motion was complete, Plaintiff filed a "Request to terminate counsel; Request for continuance." The Court then scheduled a hearing to address both Defendant's motion to dismiss and Plaintiff's requests. Counsel for Defendant failed to appear despite the docket entry setting the hearing date on this motion. See Doc. #16.

At the January 21, 2015 hearing, the Court relieved Plaintiff's counsel and granted her 45 days to find a new attorney. Due to defense counsel's absence, the Court heard no argument about the motion to dismiss and instead took it under

submission. As described below, the Court grants the motion in part with leave to amend.

## II. OPINION

### A. Statute of Limitations

The Court previously ruled that each of Plaintiff's seven causes of action were precluded by the respective statute of limitations. See id. But the Court granted leave to amend to allow Plaintiff a chance to properly plead delayed discovery. See id. In its renewed motion to dismiss, Defendant argues that the FAC's new allegation still fail to establish delayed discovery, because Plaintiff has not fully explained her lack of understanding of the modification agreement's written terms or her failure to realize the increase in interest rates in 2010 and 2011. Mot. at 5. Plaintiff counters that her allegations are sufficient in claiming that West Coast Financial precluded her knowledge of the interest rate increase by misrepresenting the contract terms. Opp. at 9.

The Court cannot dismiss the FAC "unless it is clear from the face of the complaint that the statute has run and that no tolling is possible." Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc., 2011 WL 1044899, at *3 (N.D. Cal. Mar. 23, 2011) (citing Conerly v. Westinghouse Electric Corp., 623 F.2d 117, 119 (9th Cir. 1980)); see also Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980) ("When a motion to dismiss is based on the running of a statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove

4

1 that the statute was tolled."). Whether a plaintiff is entitled
2 to delayed discovery is a factual question. E-Fab, Inc. v.
3 Accountants, Inc. Servs., 153 Cal.App.4th 1308, 1320 (2007).
4     To survive a motion to dismiss, a plaintiff must "plead
5 facts to show (1) the time and manner of discovery and (2) the
6 inability to have made an earlier discovery despite reasonable
7 diligence." See id. at 1319-20 (emphasis omitted); Rey v.
8 OneWest Bank, FSB, 2013 WL 127839, at *5 (E.D. Cal. Jan. 9,
9 2013). But a plaintiff's duty to diligently investigate is only
10 triggered when the plaintiff "has reason to suspect an injury
11 and some wrongful cause[.]" E-Fab, 153 Cal.App.4th at 1319. If
12 a plaintiff fails to suspect such an injury because she relied
13 on a misrepresentation, she may invoke the delayed discovery
14 doctrine unless her reliance, "in light of [her] own information
15 and intelligence, is preposterous and irrational." Broberg v.
16 Guardian Life Ins. Co. of Am., 171 Cal.App.4th 912, 922-23
17 (2009) (citation and quotation marks omitted) (reversing
18 dismissal where plaintiff relied on misrepresentations by
19 defendant despite having access to a document that – had
20 plaintiff read it – would have revealed the misrepresentations);
21 see also Dias v. Nationwide Life Ins. Co., 700 F. Supp. 2d 1204,
22 1223 (E.D. Cal 2010) ("[I]n cases involving a fiduciary
23 relationship, facts which would ordinarily require investigation
24 may not excite suspicion, and [] the same degree of diligence is
25 not required.") (citation and quotation marks omitted).
26     Taking the FAC's allegations as true, Plaintiff here lacked
27 the ability to understand the terms of her prospective loan
28 modification, so she relied on West Coast Financial to explain

5

them to her.  FAC ¶ 19.  West Coast Financial represented that the loan terms on offer included a fixed interest rate.  FAC ¶ 14.  The company assured her that the fixed interest rate was included in the written agreement, which induced her to sign that agreement.  FAC ¶ 19.  In these circumstances, Plaintiff had no obligation to investigate whether a misrepresentation had occurred, because she had no reason to suspect that one had. West Coast Financial, as her broker, had a duty to explain the terms of the loan modification accurately, and Plaintiff was entitled to rely on that representation.  See Moreno v. Sanchez, 106 Cal.App.4th 1415, 1424 (2003) ("Delayed accrual of a cause of action is viewed as particularly appropriate where the relationship between the parties is one of special trust such as that involving a fiduciary . . . relationship."); cf. Wyatt v. Union Mortg. Co., 24 Cal.3d 773, 783-84 (1979) ("[Plaintiffs] were persons of modest means and limited experience in financial affairs . . . .  They retained a mortgage loan broker to negotiate for them highly complex loan terms and they may be assumed to have justifiably relied on the latter's expertise. . . . [T]he broker's failure to disclose orally the true rate of interest [and to draw plaintiffs' attention to the true terms in the loan contract they signed] . . . constituted a breach of the broker's fiduciary obligations.").

Over the next two years, Plaintiff's monthly payment increased, but Plaintiff did not realize it because the increases were not substantial to her.  FAC ¶ 15.  Whether these increases were in fact insubstantial and whether Plaintiff's failure to detect the change was reasonable are questions of

6

fact that cannot be resolved on a motion to dismiss.  See E-Fab, 153 Cal.App.4th at 1321.  The Court must therefore reject Defendant's arguments on these points.

Under these circumstances, it is not "clear" that Plaintiff had reason to suspect the increasing interest rate before 2012. See Brocade Commc'ns Sys., 2011 WL 1044899, at *3.  Therefore, the Court denies the motion to dismiss the FAC based on Defendant's statute of limitations argument.

B.   Agency Relationship

Turning to the substance of Plaintiff's causes of action, the Court notes that the bulk of her claims hinge on Defendant's alleged relationship with West Coast Financial.  As discussed below, Plaintiff has failed to plead any facts evidencing such a relationship.  Her claims resting on this relationship must therefore fail.

Each of Plaintiff's claims centers on alleged wrongdoing by West Coast Financial while acting as her broker to negotiate a loan modification with Defendant.  Specifically:

- The fraud and misrepresentation claims (first, second, and seventh causes of action) allege that West Coast Financial concealed and misrepresented the true terms of the loan modification and thereby induced Plaintiff to enter into the agreement.  FAC ¶¶ 27-28, 40-41, 44, 99-100.
- The third, fourth, and fifth causes of action assert that this fraud constituted an unfair business practice, a breach of an implied covenant, and negligence.  FAC ¶¶ 51, 56, 67, 69, 72, 79-80. Only

       one allegation – which relates to the UCL claim - implicates Defendant independently of West Coast Financial. That allegation is considered separately below.

- Under promissory estoppel (sixth cause of action), Plaintiff states that she is entitled to different loan terms based on West Coast Financial's misrepresentations. FAC ¶¶ 91-92.

Unable to sue West Coast Financial as the company no longer exists, see FAC ¶ 8, Plaintiff pins her claims on Defendant. She alleges that Defendant is liable for West Coast Financial's actions because West Coast Financial acted as Defendant's agent. FAC ¶¶ 2-3, 8.

    Defendant argues that the FAC is insufficient because Plaintiff failed to put forth "a single allegation demonstrating any relationship" between West Coast Financial and Defendant. Mot. at 6:15-16. Plaintiff argues that she sufficiently alleged an agency relationship by stating that West Coast Financial "worked closely with" and "was acting as an agent on behalf of" Defendant. Opp. at 17:14-15.

    Where a plaintiff alleges that her broker is the agent of her lender, she must "allege more than conclusory allegations regarding an agency relationship[,] [because] as a matter of law, a broker is the agent of the borrower not the lender." Abels v. Bank of Am., N.A., 2012 WL 691790, at *7 (N.D. Cal. Mar. 2, 2012) (citation omitted); see Bhinder v. Bank of Am., N.A., 2013 WL 4010583, at *2 (E.D. Cal. Aug. 5, 2013) (finding allegations of agency relationship insufficient where complaint

referred to broker as lender's "agent" and stated that the lender "engaged its own mortgage broker to assist" plaintiff).

Here, the FAC contains insufficient factual allegations concerning the relationship between Defendant and West Coast Financial. Plaintiff repeatedly states that West Coast Financial "act[ed] as an agent" of Defendant. E.g., FAC ¶¶ 2-3, 8, 13, 18, 27, 30, 34, 46. But simply referring to West Coast Financial as an agent is conclusory and therefore insufficient. See Bhinder, 2013 WL 4010583, at *2; Sinclair v. Fox Hollow of Turlock Owners Ass'n, 2010 WL 5330481, at *2 n.3 (E.D. Cal. Dec. 20, 2010).

The FAC also alleges that West Coast Financial "worked closely with" and "in concert with" Defendant. FAC ¶¶ 8, 13. These statements – even if the Court, as it must, takes them as true – do not establish an agency relationship. That two companies worked together does not necessarily mean that one company was the agent of the other. See, e.g., Imageline, Inc. v. CafePress.com, Inc., 2011 WL 1322525, at *4 (C.D. Cal. Apr. 6, 2011) ("To sufficiently plead an agency relationship, a plaintiff must allege facts demonstrating the principal's control over its agent.") (citation omitted).

Because Plaintiff failed to properly plead an agency relationship, the Court must dismiss the FAC to the extent it relies on this relationship. Plaintiff alleges wrongdoing by West Coast Financial – a separate company from Defendant. Without a showing of agency, Plaintiff cannot hold Defendant liable for this wrongdoing.

///

      C.    <u>Non-Agency-Related UCL Allegation</u>

In addition to the acts allegedly committed by West Coast Financial, the third cause of action in the FAC states that Defendant violated the UCL by "intentionally fail[ing] to explore foreclosure alternatives with Plaintiff and instead proceed[ing] with the foreclosure process" and "failing and refusing to offer a reasonable loan modification without just or legal cause." FAC ¶¶ 54, 57.

Defendant argues for dismissal of these claims because Plaintiff cannot show that its actions were either unlawful or deceptive. Mot. at 10; Reply at 6. Plaintiff responds by pointing out that there are three prongs of actionable behavior under the UCL: "practices which are unlawful, unfair or fraudulent." Opp. at 15:26.

Plaintiff is correct that a defendant is liable under the UCL if it engages in business practices that are unlawful, unfair, or fraudulent. <u>Prakashpalan v. Engstrom, Lipscomb & Lack</u>, 223 Cal.App.4th 1105, 1133 (2014). Defendant failed to include an argument in its motion about the unfairness prong, so it is not entitled to dismissal of the UCL claim. See <u>Jolley v. Chase Home Finance, LLC</u>, 213 Cal.App.4th 872, 907 (2013) (reversing summary adjudication because "the trial court concluded that 'the undisputed evidence shows that Chase has not violated any law, or committed a deceptive or fraudulent act/misrepresentation to fall within § 17200[,]'" but "there was no reference to 'unfair' conduct").

Defendant next argues that Plaintiff lacks standing to bring a UCL claim, because she did not suffer an economic

injury.  Mot. at 9-10; Reply at 5-6.  In response, Plaintiff points to allegations that Defendant's behavior increased the principle on her loan while increasing her monthly payments in a way that she would not have agreed to if she had known the true terms.  Opp. at 15.

Plaintiff has sufficiently pled an economic injury.  In addition to the allegations Plaintiff stresses in her opposition, the FAC also includes statements that she suffered "falling behind on payments, . . . reduced credit scores, unavailability of credit, increased costs of credit, reduced availability of goods and services tied to credit ratings, increased costs of those services," "unwarranted late fees[,] [] other improper fees and charges[,]" "possible loss of property[,]" and increased principal and interest rates which placed her home "at risk for foreclosure[.]"  FAC ¶¶ 49, 60, 100, 101.  Many cases have found similar allegations sufficient.  See, e.g., Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 575 (7th Cir. 2012) (concluding that plaintiff sufficiently pleaded "actual pecuniary injury" where complaint alleged "she incurred costs and fees, lost other opportunities to save her home, [and] suffered a negative impact to her credit"); Jordan v. Paul Fin., LLC, 285 F.R.D. 435, 455 (N.D. Cal. 2012) ("[T]he plaintiffs have shown that the documents at issue may contain misrepresentations that caused them to obtain a loan that . . . led to lost equity in their home.  [citation omitted]  The deleterious effects of guaranteed negative amortization as well as the additional interest owed on a ballooning principal balance constitute injury in fact [under the UCL]."); Witriol v.

LexisNexis Grp., 2006 WL 4725713, at *6 (N.D. Cal. Feb. 10, 2006) (holding that alleging "costs associated with monitoring and repairing credit" is sufficient to establish economic injury).  See also Sutcliffe v. Wells Fargo Bank, N.A., 283 F.R.D. 533, 553 (N.D. Cal. 2012) (stating that "adverse credit consequences in an increase in the principal amount owed on the loan" are cognizable damages); Kouzine v. Countrywide Home Loans, Inc., 2014 WL 1696289, at *5 (Cal. Ct. App. Apr. 30, 2014) ("It cannot be factually disputed that [plaintiff] began to suffer measurable financial injury from The Bank's alleged fraud immediately upon the issuance of [plaintiff's] loan because interest on the principal began being incurred at a considerably higher rate than the two percent fixed rate which he alleged he had been promised.").  The Court therefore finds Plaintiff's allegations of injury adequate.

Defendant cites five cases to support its argument, but none are persuasive.  Defendant's first case, DeLeon v. Wells Fargo Bank, N.A., 729 F. Supp. 2d 1119 (N.D. Cal. 2010), does not contain the quote Defendant attributes to it, see Mot. at 10:3-8, nor does it discuss economic injury or standing under the UCL.

Next, Defendant mischaracterizes Jenkins v. JP Morgan Chase Bank, N.A., 216 Cal.App.4th 497 (2013).  See Reply at 5:24-27. That case held that a plaintiff adequately pled economic injury by stating that she "suffered . . . the impending foreclosure of her home."  Id. at 522.  The court then concluded that the plaintiff had not pled a causal connection between that injury and Defendant's unfair practices, because the alleged unfair

practices occurred after the plaintiff had already defaulted on the loan. Id. at 523. Thus, it was the plaintiff's default that triggered foreclosure, not the defendant's actions. Id. Similarly, in Hamilton v. Greenwich Investors XXVI, LLC, 195 Cal.App.4th 1602 (2011), the plaintiffs claimed that the defendant had violated the UCL by failing to comply with a statute requiring a lender to contact the borrower before initiating foreclosure. Id. at 1616. The court held that the plaintiff failed to show that her economic injury was caused by violation of the statute, so she lacked standing. Id. at 1617.

Here, in contrast to both Jenkins and Hamilton, Plaintiff alleges that Defendant violated the UCL in 2009 during the loan modification process. This modification preceded and allegedly caused her injuries of higher principal, increasing interest rates, and damaged credit. Indeed, Plaintiff did not default on the loan until 2014 – almost five years after the alleged wrongdoing. See RJN Exh. H. The Court therefore cannot credit Defendant's argument that Plaintiff "did not suffer economic injury based on the modification agreement." Reply at 5:14.

Defendant's final two cases are also unhelpful. Sutcliffe, 283 F.R.D. at 553, in fact goes against Defendant's argument in stating that "adverse credit consequences in an increase in the principal amount owed on the loan" are sufficient damages allegations. And Reyes v. Wells Fargo Bank, N.A., 2011 U.S. Dist. LEXIS 2235 (N.D. Cal. Jan. 3, 2011) is distinguishable. That court held that money owed under a prior agreement did not constitute damages. Id. at *48. As enumerated above, Plaintiff does not attempt to claim injury in the form of money owed under

her preexisting mortgage; rather she has alleged other valid economic injuries.

Because Plaintiff has alleged cognizable economic injury, Defendant is not entitled to dismissal of the UCL claim on this ground. The Court therefore denies the motion to dismiss as it relates to the non-agency-related UCL allegations.

### D.   Defendant's Remaining Arguments

Defendant devotes much of its briefing to separating itself from West Coast Financial's alleged representations. Many of Defendant's points boil down to an argument that if it is not liable for West Coast Financial's representations to Plaintiff, it engaged in no other illegal behavior. Regardless of whether these arguments are correct, they are moot because – with the exception of the one UCL allegation discussed above - Plaintiff has not actually alleged that Defendant engaged in wrongdoing independent of West Coast Financial's misrepresentations and aggressive tactics. The Court therefore declines to reach Defendant's other argument about its theoretical liability outside of the alleged agency relationship, including that a lender generally owes no duty to a borrower and does not guarantee a borrower's ability to repay a loan, that the contract contained "no . . . provision that [P]laintiff be placed in an 'affordable' loan," that the modification agreement was not itself misleading, and that no Wells Fargo employee made any other misrepresentation. See Mot. at 5-8, 10, 12-15; Reply at 7-9.

Because the Court dismisses Plaintiff's FAC other than the single UCL allegation, it does not reach Defendant's other

arguments for dismissal.  These include arguments that the FAC does not plead fraud with the specificity required by Federal Rule of Civil Procedure 9(b), that the FAC fails to plead detrimental reliance or damages, and that the covenant of good faith and fair dealing claim is precluded by the statute of frauds.  Mot. at 8, 11-12, 15-16.

### E. Conclusion

Plaintiff has alleged delayed discovery in a manner sufficient to avoid dismissal on the pleadings.  But as currently pled, Plaintiff has sued the wrong institution. Plaintiff claims wrongdoing by her broker, West Coast Financial, but her allegations do not establish that Defendant directed that wrongdoing or is otherwise liable for it.  The Court must therefore dismiss each of Plaintiff's claims to the extent they rely on a relationship between West Coast Financial and Defendant.  But the Court allows Plaintiff a chance to elaborate on the alleged agency relationship in an amended complaint.  To the extent that the UCL claim alleges Defendant's independent wrongdoing, the Court denies the motion to dismiss.

### III. ORDER

For the reasons set forth above, the Court GRANTS IN PART WITH LEAVE TO AMEND and DENIES IN PART Defendant's motion to dismiss.  As indicated at the hearing, the Court also grants Plaintiff 45 days from the date of this Order to retain an attorney.  Plaintiff's amended complaint must be filed within 20 days after that 45-day period expires.  Defendant's responsive pleading is due within 20 days thereafter.  Finally, the Court

directs defense counsel Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP to pay $400 to the Clerk of this Court within ten days as sanctions for failure to appear at the hearing.

IT IS SO ORDERED.

Dated: January 23, 2015

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE